Submitted on record and brief August 31, affirmed November 30, 1988

In the Matter of the Marriage of

HEATHMAN,
*Respondent,*
*and*

HEATHMAN,
*Appellant.*

(D8210-72895; CA A46463)

764 P2d 966

Leslie M. Roberts and Josselson, Potter & Roberts, Portland, for appellant.

No appearance for respondent.

Before Warden, Presiding Judge, and Graber, Judge, and Van Hoomissen, Judge pro tempore.

GRABER, J.

## GRABER, J.

Husband appeals from a post-dissolution order entered as a result of wife's "amended motion and order to show cause concerning establishment of judgment amount and interest arrears."[1] On *de novo* review, we affirm.

Husband and wife were divorced in 1983. The dissolution judgment incorporated a property settlement agreement, which provided, in pertinent part:

"6. *Par-4, Inc. Contract.* On September 22, 1971, [husband] entered into an agreement between himself and Par-4, Inc. calling for payment by Par-4, Inc. to [husband] of twenty-seven percent (27%) of the annual net profits of Par-4, as defined in that agreement. A dispute between [Par-4, Inc. and husband] [h]as resulted in a Complaint for Declaratory Judgment being filed for a determination of the rights of the parties under that agreement. In addition, as a related part of the Par-4 agreement, [husband] agreed to pay to Par-4, Inc. $15,000, together with the interest at the rate of eight percent (8%) per annum from January 19, 1972 until paid, pursuant to a promissory note of that date. The note provides that payments are to be made from amounts that may accrue to [husband] under the previously described agreement with Par-4, Inc. up to the sum of $5,000 per year.

"[Wife] is awarded one-fourth of all net amounts to be received by [husband] from Par-4, Inc. pursuant to these agreements, including any net amount received from Par-4, Inc. resulting from the present litigation. [Husband] agrees to account to [wife] annually upon receipt of any funds from Par-4, Inc. setting forth the net amount received, and paying to [wife] one-fourth of that amount within ten days of his receipt.

"7. *Other Business Interests.* [Husband] is awarded the remainder of the Par-4, Inc. interests."

In 1984, the litigation between Par-4 and husband resulted in husband's collecting a $13,000 judgment from Par-4. He paid $6,098 in litigation costs to recover the $13,000. In 1985, husband sold all of his interest in Par-4, including his rights under the contract referred to in the property settlement, to Metropolitan Capital Corporation (Metropolitan) for

---

[1] The order is appealable as a final order affecting a substantial right, made in a proceeding after judgment. ORS 19.010(2)(c).

$75,000. Wife received none of the $13,000 and none of the $75,000. Consequently, she initiated this proceeding. The trial court found, *inter alia,* these facts and entered this order:

"4. That the language from Par-4, Inc. [in the property settlement] included but was not limited to income, dividends, earnings and amounts generated from the sale of said contract.

"5. That [husband] had received $75,000 from the sale of the contract in August of 1985 and $6,902 on or about November 2, 1982 as earnings on said contract to which [wife] was entitled to one quarter interest.

"6. That [husband's] 1985 income tax returns which reflected the receipt of the $75,000 contract sale in 1985 showed that he paid taxes in the amount of $6,516 which the court finds should be subtracted from the $75,000 to determine the net amount received by [husband].

"* * * * *

"WHEREFORE, it is hereby ordered that [wife] is entitled to receive from the [husband] and [husband] is indebted to [wife in] the amount of $18,846.50 pursuant to said Property Settlement Agreement of June 7, 1983."

 Husband first argues that the trial court lacked authority to entertain wife's motion, because the motion necessarily entailed modification of the property division of a dissolution judgment.[2] We agree that the trial court may not modify the property provisions of the judgment in the guise of interpreting them. *Pope and Pope,* 301 Or 42, 45, 718 P2d 735 (1986). We do not agree, however, that that is what occurred here. What wife seeks is a construction, by court order, of the dissolution judgment to make the amount of that judgment certain.[3] The trial court has authority to do that. A court may

---

[2] Husband relies in particular on *Kuckenberg v. Kuckenberg,* 252 Or 647, 452 P2d 305 (1969), where the property settlement, incorporated into the divorce decree, provided that the household furnishings be divided as the parties agreed. The parties could not agree. Upon application of wife, the trial court in *Kuckenberg* issued an order directing the sheriff to take possession of the property, sell it, and divide the proceeds equally between husband and wife. The Supreme Court reversed, because the trial court had no authority to modify the judgment. Unlike in *Kuckenberg,* the order in this case adds no additional terms or obligations to those in the original judgment.

[3] Husband correctly points out that wife cannot enforce the property provisions of the dissolution judgment in a contempt proceeding. ORS 33.010(1)(e); ORCP 78C. Thus, property provisions in a dissolution judgment are enforced as are ordinary money judgments.

interpret ambiguous portions of a dissolution judgment, including the property division. *See Cross and Cross,* 55 Or App 422, 425, 637 P2d 1386 (1981); *see also Anderson and Anderson,* 65 Or App 16, 19, 670 P2d 170 (1983).

We turn to the merits and review *de novo.* ORS 19.125(3); ORS 107.405; *Cross and Cross, supra,* 55 Or App at 424. We agree with the trial court's implicit finding that the dissolution judgment is ambiguous. It is ambiguous principally because the phrase "received by [husband] from Par-4, Inc. pursuant to these agreements" is reasonably subject to two interpretations. Husband argues that the phrase applies only to money paid *directly* from Par-4 to him. The trial court reasoned that the phrase has a broader meaning and applies to money *derived* from the Par-4 agreements.[4]

■ Husband further argues that, because the property settlement was a contract between the parties, we should follow "familiar canons" of contract construction, for example, by discerning the intentions of the parties to resolve ambiguities. The problem with the argument is that we are interpreting not a contract, but a *judgment.* That is so, even though the provision at issue was incorporated into the judgment from an agreement of the parties. In construing a judgment, we try to achieve the intentions of the court that entered it. *Cross and Cross, supra,* 55 Or App at 425.

■ The only evidence of the court's intent that we have is the judgment itself:

> "[Wife] is awarded one-fourth of all net amounts to be received by [husband] from Par-4, Inc. pursuant to these agreements * * *."

---

[4] The court reasoned:

"The key word seems to be the word 'from.' Does 'from' mean an income stream from Par-4 or does 'from' mean from the asset value of Par-4? It is common for a time in domestic relations practice to refer to an asset as from an asset. In other words, you get an amount from this asset, meaning from the value of the asset, not an income stream from the asset. And I am interpreting it that way in today's case.

"So I find that petitioner was awarded one-fourth of the net value of respondent's interest in Par-4. When that interest was an income stream, she was entitled to one-quarter of the income stream. When that asset was sold, she was entitled to one-fourth of the asset, subject to the deduction of legitimate expenses associated with the asset."

Does "from" mean, as husband contends, only funds paid directly from Par-4 to him? Or does "from" mean, as the trial court reasoned, from the asset value? There are two difficulties with husband's proposed interpretation. First, the judgment does not say "directly from," but only "from." Second, and reading the judgment as a whole, we believe that the court entering it did not intend that husband could avoid this obligation by selling his Par-4 interests to a third party before any amounts accrued to wife. Accordingly, we hold that wife has a one-fourth interest in the "net amount" that husband received as a result of transfering his interest in the Par-4 contract.[5]

■ The next question is what constitutes "net amount" within the meaning of the judgment. Husband argues that we should deduct several items from the money that he received: the value of time that he expended on behalf of Par-4, taxes, and various expenses. We disagree, because the judgment unambiguously defines "net amount" as "twenty-seven percent of Par-4's net profits," which Par-4 owed to husband, less husband's payments on his $15,000 promissory note in favor of Par-4.[6] In graphic terms:

(A) 27% of Par-4's net profits

− (B) Payments on note

_____

(C) Net amount.

Although husband did not receive the profit share payments directly from Par-4 or make payments to Par-4 on the note, nothing in the judgment suggests that he is to receive

_____

[5] Husband makes several arguments to the contrary, all but one of which we reject without further discussion. Husband argues that, if we allow wife to share in the $75,000, we ignore paragraph 7, which gave 100 percent of husband's remaining interests in Par-4 (those not divided in paragraph 6) to him. For example, husband asserts that he had a right of first refusal to purchase Par-4 stock and that, if he had executed and profited from that right, no part of the profit would accrue to wife. We note, however, that that is not this case and that the record does not show that any part of the $75,000 is attributable to interests referred to in paragraph 7.

[6] Husband cites several cases defining "net profit." *See, e.g., McCulsky v. Klosterman,* 20 Or 108, 111, 25 P 366 (1890). His reliance is misplaced, because those cases define "net" only as used in the contracts at issue there. They are of no help in determining what "net" means in this judgment.

credit for labor, taxes, or other expenses. If there was any error in the trial court's calculation, it did not prejudice husband.[7]

Finally, the judgment awarded wife, as a separate item, one-fourth of all net amounts received by husband from his action against Par-4. Husband received $6,902, net, from the litigation, of which wife is entitled to $1,725.50. Husband raises no additional arguments about the calculation of that amount.

Affirmed. No costs to either party.

---

[7] Husband received $75,000 from Metropolitan in lieu of payments directly from Par-4. As part of husband's sale of his interests in Par-4 to Metropolitan, Metropolitan assumed his obligation on the note. The value that husband and Metropolitan assigned to his interests in Par-4 reflected not only Par-4's obligations to husband (line (A) in the illustration), but also Metropolitan's assumption of his obligation on the note (line (B)). Thus, the only amount to be credited in determining net amount (line (C)) already was credited when the $75,000 figure was reached.